IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Andre J. Williams, ) | Civil Action No. 3:11-02179-MBS |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| Randy Scott, Individually and in his ) | **ORDER AND OPINION** |
| official capacity as chief of the ) | |
| Columbia Police Department, and ) | |
| The City of Columbia, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Plaintiff Andre J. Williams ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 against Randy Scott ("Scott"), the Police Chief of the City of Columbia, South Carolina, individually and in his official capacity as chief of the City of Columbia's Police Department ("COCPD"). From Scott, Plaintiff seeks to recover damages for alleged violations of his First and Fourteenth Amendment rights. (ECF No. 1, pp. 5-6.) Plaintiff also alleged a state law cause of action against the City of Columbia ("COC"), his employer, for breach of contract, but this claim was withdrawn resulting in the dismissal of the COC from the case. (Id. at pp. 6-7.) This matter is before the court on Scott's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 23.) In response to Scott's motion, Plaintiff contends that he has presented sufficient evidence creating genuine issues of material fact to preclude an award of summary judgment to Scott. (See ECF No. 27.) For the reasons set forth below, the court **GRANTS** Scott's motion for summary judgment.

**I.   RELEVANT FACTUAL AND PROCEDURAL HISTORY**

Plaintiff began his employment with the COCPD on July 29, 1991. (ECF No. 27-2, p. 8.)

1

For the period of employment relevant in this case, Plaintiff was a sergeant assigned as the director and trainer of the K-9 unit until April 5, 2011, when he was demoted. (ECF Nos. 23-9, pp. 2-3; 27, p. 2.) Plaintiff alleges that his demotion occurred as a result of his vocal opposition at meetings of the COC's city council (the "City Council") in the summer of 2010 to a proposal for merging law enforcement personnel of the COCPD and the Richland County (South Carolina) Sheriff's Department ("RCSD") under the supervision of Richland County Sheriff Leon Lott ("Sheriff Lott"). (ECF No. 27, p. 3.)

The first meeting about the proposed law enforcement merger relevant to this matter occurred on July 14, 2010, when the City Council held an in-depth roundtable discussion with Sheriff Lott. (ECF Nos. 23-2, pp. 2-3; 27-1, p. 81.) Certain individuals, including Plaintiff, appeared before City Council "to comment on the possible joint administration of law enforcement duties of the Columbia Police Department." (Id.) Plaintiff voiced concern about Sheriff Lott's ability to fire employees at will just because he might disagree with what the employee might say, and further expressed his sense of pride in the COCPD. (ECF No. 27-2, pp. 49-50.)

On August 9, 2010, law enforcement personnel in the COCPD, including Plaintiff, participated in training to reinforce proper payroll and timekeeping procedures. (ECF Nos. 23-5, p. 2; 27-1, pp. 49-50.) Defendants allege that the training was part of a settlement that the COCPD reached with the United States Department of Labor to resolve a dispute regarding overtime compensation for police officers. (ECF NO. 23-1, pp. 3-4.) As a result of the settlement, all officers of the COCPD were trained on how their compensatory time should be recorded to ensure they were being paid in compliance with the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219. (Id.)

On September 1, 2010, City Council held a public hearing on the issue of "the potential conflict for the management and oversight of the Columbia Police Department by the Richland County Sheriff's Department." (ECF No. 23-3.) Plaintiff was one of the individuals who appeared to provide input and again voiced his opposition to the merger. (ECF No. 27-1, pp. 58-59.)

At a work session on September 29, 2010, the City Council rejected the merger and voted to direct the city manager to move forward with hiring a police chief. (ECF No. 23-4, p. 6.) As a result, Scott was hired as the interim police chief, effective October 15, 2010, which hire became permanent on January 18, 2011. (ECF Nos. 27-1, pp. 60-61; 27-3, pp. 6, 14.)

After taking the job as police chief and prior to March 2011, Scott received information from Deputy Police Chief Ruben Santiago ("Santiago") that there were inconsistencies in Plaintiff's time sheets in relation to funeral assignments he had worked.[1] (ECF Nos. 27-3, pp. 15-17; see also ECF No. 23-6, p. 2.) As a result, Scott initiated a joint investigation with the Richland County Solictor's Office ("RCSO") in February 2011, due to the potential criminal implications of the allegations against Plaintiff. (ECF Nos. 27-3, pp. 30-32; see also ECF No. 23-8, pp. 2-3.) Following a review of Plaintiff's time sheets and funeral escort records obtained from funeral homes, the RCSO issued an investigation report (the "Solicitor's Report") dated March 24, 2011, which contained findings that there were twenty instances of "double-dipping" in which Plaintiff's time sheets showed him to be on duty for the COCPD, while being paid to escort funerals. (ECF No. 23-8, pp. 2-26.)

---

[1] Plaintiff asserts that it was custom and approved practice for officers of the COCPD to work extra duty and be paid for those extra duties, including payment by funeral parlors for escorting funeral processions. (ECF No. 27-1, pp. 61-62.) Plaintiff and several other officers had been members of the "funeral board" for years and routinely escorted funerals on request, with the permission of their supervisors, and were paid separately by the funeral home operators for those services. (Id.)

Also on March 24, 2011, Scott initiated a meeting with Plaintiff in his office. (ECF No. 27-1, pp. 11, 16.) Scott told the Plaintiff that he had received an anonymous complaint that Plaintiff had been "double-dipping" by working funerals, while also being paid by the COC for being on-duty. (Id. at pp. 11-12.) Plaintiff vehemently denied any wrongdoing and Scott assured him not to worry about it. (Id. at pp. 12-14.) Plaintiff asked for specifics about the accusations, but did not receive any from Scott. (Id. at pp. 13-15.)

On April 4, 2011, Santiago told Plaintiff that he was going to be given the choice of resignation or termination. (ECF No. 27-1, pp. 20-21.) Thereafter, Plaintiff met with Scott and was informed that although twenty counts of "double-dipping" had been found, criminal charges were not going to be pursued against Plaintiff. (Id. at pp. 22-30; see also ECF No. 23-8, pp. 2-3.) Plaintiff again unsuccessfully inquired as to the nature of the charges and for other details surrounding the allegations against him. (ECF No. 27-1, pp. 28-30.)

On April 5, 2011, as a result of the findings in the Solicitor's Report, Plaintiff was demoted two ranks from sergeant to master police officer; placed on six months' probation; removed from the K-9 unit; and prohibited from any extra duty assignments for six months for alleged willful violation of policies and procedures designated as "leaving duty post" and "falsification of records or willful false statements to supervisors." (ECF No. 23-9, pp. 2-3.)

After his demotion, Plaintiff filed a grievance. (ECF No. 27-2, p. 1.) On May 23, 2011, the COC's Employee Grievance Committee ("COCEGC") met to consider Plaintiff's grievance. (Id. at pp. 13-43.) On May 24, 2011, the COCEGC issued its recommendation that Plaintiff's demotion be upheld. (ECF No. 27-2, p. 11.) The city manager of the COC communicated to Plaintiff his agreement with the recommendation of the COCEGC on May 25, 2011. (ECF No. 27-2, p. 12.)

On August 17, 2011, Plaintiff filed a complaint in this court against Scott and the COC (collectively, "Defendants") alleging that (1) Plaintiff was demoted because he exercised his First Amendment right of freedom of speech in voicing objections at City Council meetings in the summer of 2010 to a proposal to merge the COCPD with the RCSD; (2) he was denied due process in violation of the Fourteenth Amendment because he was neither interviewed during the investigation process resulting in the Solicitor's Report nor provided a copy of the Solicitor's Report; and (3) the COC breached his employment contract established by COC's policies and procedures. (ECF No. 1.) Defendants answered the complaint denying Plaintiff's claims on September 8, 2011. (ECF No. 7.) Thereafter, on June 5, 2012, Defendants filed a motion for summary judgment. (ECF No. 23.) Plaintiff filed opposition to Defendants' motion for summary judgment on July 6, 2012, to which Defendants filed a reply in support of summary judgment on July 16, 2012. (ECF Nos. 27, 28.)

On October 3, 2012, the court held a hearing on Defendants' motion for summary judgment. (ECF No. 36.) At the October 3, 2012 motion hearing, Plaintiff orally withdrew his claim for breach of contract, which retraction was accepted by the court thereby resulting in the dismissal of the COC as a defendant in this matter. See Fed. R. Civ. P. 41(a).

## II. LEGAL STANDARD AND ANALYSIS

A. **Standard**

1. Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242,

248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Anderson, 477 U.S. at 249.  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).  A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge.  See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

    2.    <u>Claims pursuant to 42 U.S.C. § 1983</u>

42 U.S.C. § 1983 is the vehicle by which individuals make legal claims for violations of their federal rights.  See Kendall v. City of Chesapeake, 174 F.3d 437, 440 (4th Cir. 1999).  To establish a cause of action under 42 U.S.C. § 1983, a plaintiff must allege: 1) the violation of a right protected by the Constitution or laws of the United States, and 2) that the defendant was

acting under color of law.[1]  Parratt v. Taylor, 451 U.S. 527, 535 (1981).

        a.     *Violation of the First Amendment*

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend. I. The right of free speech, as guaranteed by the First Amendment, "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). To establish a § 1983 claim for violation of the First Amendment's free speech protections, a public employee plaintiff must show: (1) that he spoke as a citizen, not an employee, on a matter of public concern; (2) that his interest in the expression at issue outweighed the employer's interest in providing effective and efficient services to the public; and (3) that there was a sufficient causal nexus between the protected speech and the retaliatory employment action. Smith v. Frye, 488 F.3d 263, 267 (4th Cir. 2007); McVey v. Stacy, 157 F.3d 271, 277-78 (4th Cir. 1998).

        b.     *Due Process Violations*

The Fourteenth Amendment to the United States Constitution provides in part that no State may "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. The Supreme Court has recognized there are three types of claims that may

---

[1] 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

be brought in a § 1983 action alleging violations of the Due Process Clause. First, the Due Process Clause incorporates many of the specific protections defined in the Bill of Rights. Zinermon v. Burch, 494 U.S. 113, 125 (1990). A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, e.g., freedom of speech or freedom from unreasonable searches and seizures. Id. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." Id. (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)). The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. Id.

A plaintiff bringing a § 1983 action for procedural due process must show that the state deprived him or her of a constitutionally protected interest in "life, liberty, or property" without due process of law. Zinermon, 494 U.S. at 125 (citing Parratt v. Taylor, 451 U.S. at 537). A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). If a plaintiff can show that he was deprived of life, liberty, or property, a defendant is still entitled to summary judgment if the plaintiff is unable to show that the procedures used were constitutionally inadequate. Taylor v. City of Columbia, C/A No. 3:07–983–JFA, 2010 WL 296901, at **6-7 (D.S.C. Jan. 20, 2010).

To establish a claim of substantive due process a plaintiff must show that: (1) he had property or a property interest; (2) the State deprived him of this property or property interest; and (3) the State's action falls so far beyond the out limits of legitimate governmental action that no process could cure the deficiency. Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 817 (4th Cir. 1995). For substantive due process to apply, governmental action must be "so arbitrary

and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protection or of adequate rectification by any post-deprivation state remedies. Rucker v. Harford Cnty., 946 F.2d 278, 281 (4th Cir. 1991).

    3.    Qualified Immunity

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. Thus, determining whether an official is entitled to qualified immunity requires that the court make a two-step inquiry "in proper sequence." Parrish v. Cleveland, 372 F.3d 294, 301-02 (4th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 200 (2001)). As a threshold matter, the court must determine whether, taken in the light most favorable to Plaintiff, the facts alleged show that the conduct of the defendant violated a constitutional right. Id. If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and Plaintiff cannot prevail. Id. If the facts do establish such a violation, however, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. Id. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." Id. "If the right was not clearly established in the 'specific context of the case' - that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted' - then the law affords immunity from suit." Id. (quoting Saucier, 533 U.S. at 201).

9

B. **Analysis**

1. Plaintiff's First Amendment Retaliation Claim

Plaintiff contends that he was demoted because he engaged in protected First Amendment speech in voicing objections at City Council meetings in the summer of 2010 to a proposed merger of the COCPD and the RCSD. In response to Plaintiff's First Amendment allegations, Scott asserts that Plaintiff lacks standing as a "private citizen" to assert a First Amendment claim because he is not a resident of Columbia, South Carolina, and he cannot claim First Amendment protection because he appeared before the City Council as a member of the COCPD. (ECF No. 23-1, p. 9 (citing Jurgenson v. Fairfax Cnty., Va., 745 F.2d. 868, 880 (4th Cir. 1984) (speech of police officers must be evaluated with the "special character of the organization in mind.")).) Scott further asserts that there is no direct or circumstantial evidence that could lead a reasonable jury to find a causal nexus between Plaintiff's demotion and conduct protected by the First Amendment.[2] (ECF No. 23-1, p. 11.)

In opposing Scott's motion for summary judgment, Plaintiff asserts that he spoke at the City Council meetings as a citizen, not as an employee. (ECF No. 27, p. 9 (citing ECF No. 27-1, pp. 58) ("I appeared for myself, my community, of course, and people that voiced their opinions to me within the Department. Nobody came to me and said, 'Andre, you're going to be the spokesperson for the Police Department.'").) Moreover, Plaintiff argues that Scott failed to cite any authority in support of his position that Plaintiff is not a citizen for First Amendment purposes because he resides somewhere other than Columbia, South Carolina. (ECF No. 27, p.

---

[2] The parties disagree on the standard for causation. Scott asserts that to satisfy the third prong/causal nexus of a First Amendment claim, a plaintiff must show that "but for" the protected expression, the defendant would have not taken the alleged retaliatory action. (ECF No. 28, p. 4 (citing Huang v. Bd. of Governors of the Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990)).) On the other hand, Plaintiff argues the appropriate standard is that "the protected speech was a 'substantial factor' in the decision to take the allegedly retaliatory action." (ECF No. 27, p. 11 (citing McVey v. Stacy, 157 F.3d 271, 277-78 (4th Cir. 1998)).)

8.) Plaintiff further disagrees with Scott's assertion that there is a lack of temporal proximity between Plaintiff's appearance at the City Council meetings (July 14, 2010 & September 1, 2010), and the date of his demotion (April 5, 2011). (Id. at p. 12.) Plaintiff contends that the courts have not defined the minimum number of months required to negate a causal connection as a matter of law so as to justify an award of summary judgment. (Id. at p. 13.) As such, Plaintiff argues that a sufficient question of fact is created by the temporal proximity between (1) the exercise of freedom of speech in July and September 2010, (2) Scott's permanent appointment as chief on January 18, 2011, (3) Scott's referral of allegations against Plaintiff to the RCSO on February 15, 2011, and (4) Plaintiff's demotion on April 5, 2011. (Id. at p. 14.)

In conjunction with his evidence of temporal proximity, Plaintiff asserts that circumstantial evidence also supports his claim that protected speech was a substantial factor in the decision to demote him. (Id. at p. 15.) Citing his own testimony, Plaintiff argues that Sheriff Lott was Scott's mentor and it was very clear from Scott's comments during their meeting that Sheriff Lott's anger at Plaintiff and Scott's loyalty to Sheriff Lott played a substantial role in Scott's handling of Plaintiff's discipline.[3] (Id.)

2. Plaintiff's Due Process Claim

Plaintiff alleges his due process rights were violated because he was neither interviewed during the investigation process resulting in the Solicitor's Report nor provided a copy of the Solicitor's Report. Scott contends that Plaintiff does not have a federal right to receive an interview during an investigation or receive a copy of the Solicitor's Report as a condition of

---

[3] Specifically, Plaintiff testified that Scott told him on March 24, 2011 that "a lot of people don't like you . . . [a] lot of people don't like you and don't like your wife and, you know, sometimes, you know, you standing up for what you thought was right may not have been the best thing . . . [y]ou probably should have just left it alone . . . [t]hat thing with [Sheriff] Leon [Lott], just leave it alone . . . [l]et that thing die down." (Id. (citing ECF No. 27-1, pp. 15-16).) Plaintiff also testifies that Scott told him that "Sheriff Lott wanted this investigation because he would put [Plaintiff's] A-S-S in jail." (Id. (citing ECF No. 27-1, p. 158).)

11

imposing discipline.[4] (ECF No. 23-1, p. 14.) Scott further contends that even if Plaintiff was denied access to the Solicitor's Report, Plaintiff's due process claim fails because municipal police officers have no right to "due process" beyond the grievance procedure that Plaintiff elected to exercise. (Id. at p. 15 (citing Bunting v. City of Columbia, 369 F.2d 1090, 1093 (4th Cir. 1981) (under council-manager form of government, municipal employees, including police officers, have no property interests to support a due process claim); McMillan v. Pee Dee Reg'l Airport Comm'n, 705 F. Supp. 2d 496, 499-500 (D.S.C. 2010) (no procedural due process claim available to public at-will employees)).)

Plaintiff asserts that there is no dispute that he was neither questioned about the "double-dipping" accusations, nor provided a copy of the Solicitor's Report or any of documentation of the specific charges against him. (ECF No. 27, p. 21.) In this regard, Plaintiff believes the only dispute between the parties is whether he asked for the Solicitor's Report, which based on the facts in the record is a question for the jury. (Id.)

In response to Scott's argument that he was without entitlement to due process beyond the grievance procedure, Plaintiff contends that COC's grievance policy required that he "receive in reasonable detail notice of the nature of the acts or omissions which are the basis for the disciplinary action." (Id. at p. 22 (citing ECF No. 23-10, p. 4).) Accordingly, Plaintiff argues the grievance procedure in this case was not constitutionally adequate because he only received a two-page form that summarized the result of the investigation while the actual Solicitor's Report was 363 pages. (Id. (citing ECF No. 23-9).)

---

[4] Nonetheless, Scott asserts that he did not deny Plaintiff a copy of the Solicitor's Report. (ECF No. 23-1, p. 15 (citing ECF No. 27-3, pp. 34-35 (Scott testifying he would have provided the report if requested)).)

12

3. Qualified Immunity

Scott asserts that Plaintiff cannot show that a clearly established federal right was violated by (1) the disciplinary action he received or (2) his failure to receive either an interview in the investigation process or a copy of the Solicitor's Report. (ECF No. 23-1, pp. 13, 17.) Therefore, Scott argues he is entitled to qualified immunity. (Id.)

Plaintiff asserts that Scott is not entitled to summary judgment on the basis of qualified immunity because a reasonable police chief would have known to forego considering public comments by an officer in making the decision to demote the officer. (ECF No. 27, p. 20.)

4. The Court's Review

Plaintiff's First Amendment retaliation claim fails because he cannot establish that the speech at issue was protected by the First Amendment. See Smith, 488 F.3d at 267. In this regard, Plaintiff's vocal opposition to the law enforcement merger of the COCPD and RCSD does not qualify as protected speech because his comments were not a matter of public concern. "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." Campbell v. Galloway, 483 F.3d 258, 267 (4th Cir. 2007) (citation omitted); see also Connick v. Myers, 461 U.S. 138, 147 (1983) (Whether the speech relates to a matter of public concern turns on "the content, form, and context . . . as revealed by the whole record."). The record establishes that Plaintiff appeared before the City Council as "Sergeant Andre Williams" of the COCPD at two public hearings in July and September 2010. (ECF Nos. 23-2, p. 2; 23-3, p. 2.) At these public forums, Plaintiff voiced concerns that the merger of the COCPD and RCSD would give Sheriff Lott the ability to unfairly fire him at will. (See ECF No. 27-2, p. 49 ("He may disagree with what I say and come in the next morning and fire me . . . [i]s that fair for me and my family?").) Plaintiff also voiced his general support for

the unique identity of the COCPD. (Id. at p. 50 ("I love the Columbia Police Department's identity . . . I have pride in the uniforms, the cars, the dogs.").) Finally, Plaintiff accused Sheriff Lott of preventing deputies of the RCSD from attending a funeral for Plaintiff's patrol dog as retaliation for Plaintiff speaking out at the previous City Council meeting. (Id. at p. 47 ("There are deputies that wanted to come and Lott wouldn't let them.").) In sum, these statements establish that Plaintiff was concerned about his job security with the COCPD and attendance at the funeral of his patrol dog when he addressed the City Council. Employee statements that merely air "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest" are not entitled to First Amendment protection. Stroman v. Colleton Cnty. School Dist., 981 F.2d 152, 156 (4th Cir. 1992). Therefore, Plaintiff cannot establish that he engaged in speech protected by the First Amendment.

However, even if Plaintiff had engaged in protected speech, his First Amendment claim fails because Plaintiff's protected speech did not cause his demotion. Using either the "but for" or "substantial factor" standard, the undisputed evidence establishes that Plaintiff was demoted because he accepted money to escort funerals while on the clock for the COCPD. Love-Lane v. Martin, 355 F.3d 766, 776 (4th Cir. 2004) (Causation "can be decided on 'summary judgment only in those instances when there are no causal facts in dispute.'") (citation omitted). Accordingly, the evidence fails to create a question of fact regarding whether Plaintiff's demotion occurred "but for" or was substantially motivated by any alleged protected speech by Plaintiff. Therefore, Scott is entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

Plaintiff's Fourteenth Amendment due process claim fails because he does not have a liberty or property interest within the meaning of the Fourteenth Amendment. See Bunting v.

14

City of Columbia, 639 F.2d 1090, 1093 (4th Cir. 1981). Plaintiff attempts to create a property interest in the Solicitor's Report by arguing that COC's grievance procedure required that he "receive in reasonable detail notice of the nature of the acts or omissions which are the basis for the disciplinary action." (ECF No. 27, p. 22 (citing ECF No. 23-10, p. 4).) However, not only is there no significantly probative admissible evidence in the record that Plaintiff requested the Solicitor's Report from Scott or the COCEGC, the COC's grievance procedure specifically states that "[n]othing in this grievance procedure creates a property interest . . . ." (ECF No. 23-10, p. 4.) Plaintiff further fails to satisfy the requirements for establishing a due process claim based on a deprivation of a liberty interest because he cannot show that the charges resulting in his demotion were "false" or published in a stigmatizing fashion. Sciolino v. City of Newport News, Va., 480 F.3d 642, 646 (4th Cir. 2007) (To establish such a claim, an employee must allege that the employer made statements regarding the employee "that: (1) placed stigma on [the employee's] reputation; (2) were made public by the employer; (3) were made in conjunction with [the employee's] termination or demotion; and (4) were false."). Based on the foregoing, Scott is entitled to summary judgment with regard to Plaintiff's due process claim.

As a result of the failure to establish his claims brought pursuant to the First and Fourteenth Amendments, Plaintiff cannot show that his constitutional rights were violated. Therefore, Scott is entitled to summary judgment as to the claims against him in his official capacity as chief of the COCPD. Furthermore, without evidence of a constitutional violation, the court is not required to determine whether any rights Plaintiff has asserted were "clearly established" for purposes of qualified immunity. See DiMeglio v. Haines, 45 F.3d 790, 799 (4th Cir. 1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without

the court ever ruling on the qualified immunity question."); Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir. 1992) ("In analyzing the appeal of a denial of summary judgment on qualified immunity grounds, it is necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established."). As such, Scott is also entitled to summary judgment in his individual capacity on his affirmative defense of qualified immunity. (See ECF No. 7, p. 6.)

### III. CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** Scott's motion for summary judgment with respect to Plaintiff's claims pursuant to 42 U.S.C. § 1983. (ECF No. 23.) The court further accepts Plaintiff's withdrawal of his claim for breach of contract against the City of Columbia and, therefore, the City of Columbia is dismissed from the matter without prejudice.

**IT IS SO ORDERED**.

/s/Margaret B. Seymour  
MARGARET B. SEYMOUR  
CHIEF UNITED STATES DISTRICT JUDGE

October 24, 2012  
Columbia, South Carolina